UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SHAHBORN EMMANUEL,

        Plaintiff,

v.                                              Case No. 5:03-cv-358-Oc-10GRJ

MIMI POTTS, et al.,

        Defendants.

_____

**<u>ORDER</u>**

This case was initiated by the filing of a Civil Rights Complaint on October 10, 2003. (Doc. 1.) Plaintiff, a <u>pro se</u> federal inmate, is incarcerated at the Coleman Federal Correctional Complex (FCC Coleman) within this District. In the Complaint, Plaintiff alleges that the Defendants, Associate Warden Potts and Chaplain Johnson, violated his rights under the First and Fifth Amendments to the United States Constitution. Specifically, the Plaintiff argues that the Defendants have violated his right to the free exercise of religion, and his right to equal protection under the law. Both defendants were served by United States Marshal on June 25, 2004, and on August 24, 2004, filed a joint Motion to Dismiss for Failure to Exhaust Administrative Remedies or, in the Alternative, Motion for More Definite Statement. (Doc. 17.)

Subsequently, Plaintiff was granted permission to file an Amended Complaint

to add additional defendants and an Amended Complaint was filed on December 29, 2004. (Doc. 32.) It does not appear as if Plaintiff ever served the Amended Complaint on counsel for defendants Potts and Johnson, and the Court has yet to direct service upon the additional defendants.[1] However, a review of the Amended Complaint shows that the Amended Complaint is identical to the original complaint, except for the addition of six new defendants.[2]

## The Complaint

In the Complaint, the Plaintiff alleges that, as a Muslim, he is not given the same opportunity to practice his religion as inmates of other faiths are given. In addition, Plaintiff alleges that the services of Muslim inmates are monitored and controlled in such a way as to deprive those inmates from worshiping in the manner required by their religion.

In support of his claims, Plaintiff alleges that on August 18, 2003, Defendant Potts, and Chaplain Johnson,[3] denied him the right to pray. Chaplain Johnson also threatened to "lock-up" eight Muslim inmates who were in the Special Housing Unit (SHU), and Defendant Potts told Plaintiff that the Muslims in the SHU could not give

---

[1] On one occasion, Plaintiff submitted incorrect summons and Marshal forms that had to be returned. (Doc. 33.) Subsequently, Plaintiff requested an extension of time to file the appropriately completed forms. (Doc. 41.) The Court only recently received all the completed forms. (Doc . 43.)

[2] In the Amended Complaint, Plaintiff adds Warden Stan Yates, Former Warden Donald McKelvy, Captain Steven Jenkins, Associate Warden Dennis Johnson, Chaplain Abdur Rahman Sykes, and Lieutenant Jamie Bengford as additional defendants.

[3] Because Plaintiff has named two defendants with the last name Johnson, the Court will refer to Defendant  John Johnson as "Chaplain Johnson" and Defendant Dennis Johnson as "Associate Warden (A.W.) Johnson."

the mandatory Friday Jum'Ah service. In addition, the Plaintiff alleges that Chaplain Johnson forces more than 50 Muslims into the smallest room possible for religious services and that both Defendants display preferential treatment to all other faith groups.[4] Finally, the Plaintiff alleges that the Defendants allow women wearing perfume to attend the Jum'Ah service in violation of the tenets of the Muslim faith.

Due to these alleged constitutional violations, the Plaintiff requests that:

(1) Defendant Potts be removed from her position as the Associate Warden of Operations and Programs;

(2) Chaplain Johnson be removed from his position as the supervisory Chaplain;

(3) Plaintiff be compensated in the amount of $100,000;

(4) Plaintiff receive a sentence reduction of 80%;

(5) Plaintiff be transferred to the Federal Correctional Institution in Otisville; and,

(6) Plaintiff be allowed to purchase all of the items necessary to the practice of his religion without further interference from the institution.

---

[4] Specifically, Plaintiff alleges that: (1) Defendant Potts and Chaplain Johnson monitor Muslim services, but do not monitor other religious services; (2) Defendant Potts and Chaplain Johnson do not allow Muslim inmates to purchase certain items necessary to their religious command, such as incense, oils and tea; (3) Defendant Potts and Chaplain Johnson restrict the guests that may come to visit Muslim inmates, but do not restrict the guests of other inmates on the basis of their faith; (4) Defendant Potts and Chaplain Johnson do not allow Muslim inmates to do the obligatory acts required by their religion, such as praying, teaching, and having certain foods to eat; (5) Defendant Potts and Chaplain Johnson allow other religious groups to spend more money on materials for the furtherance of their religious beliefs; and (6) Defendant Potts and Chaplain Johnson allow the Christian inmates to have a larger library than all other faith groups.

## Defendant Potts and Chaplain Johnson's
## Motion to Dismiss, or for a More Definite Statement

In the Defendants' Motion to Dismiss, defendant Potts and Chaplain Johnson argue that the Complaint is due to be dismissed for the failure to exhaust available administrative remedies. In the alternative, should the Court find that Plaintiff's claims are exhausted, the Defendants assert that the Plaintiff should be required to make a more definite statement of his claim. Finally, in an abundance of caution, the Defendants assert seven defenses to Plaintiff's claims to prevent any future claim of waiver.[5]

A review of the file shows that as of the date of this Order, Plaintiff has not filed a reply to the Defendants' motion.[6]

## Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act (PLRA):

> (a) Applicability of Administrative Remedies. No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997(e).

---

[5] The Defendants plead the following defenses: (1) Plaintiff fails to state a claim against the individual defendants; (2) Plaintiff lacks standing to bring the claims raised in the complaint; (3) the defendants have qualified immunity from suit; (4) Plaintiff has failed to prove qualified immunity is inapplicable in this case; (5) Plaintiff fails to allege a constitutional violation; (6) Plaintiff has not alleged sufficient facts to state a constitutional claim for the violation of his equal protection rights; and (7) there is not a constitutional right to be free from supervision during religious programs in prison.

[6] Plaintiff was advised of the consequences of failing to properly respond to a motion to dismiss or motion for summary judgment in the Order to Answer and Notice to Plaintiff (Doc. 12) issued on May 27, 2004.

As this exhaustion requirement applies to both state and federal prisoners,[7] Plaintiff in this case is required to exhaust his administrative remedies before filing suit regardless of the relief offered through the administrative procedures.[8] The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[9] and a court does "not review the effectiveness of those remedies, but rather, whether remedies were available and exhausted."[10] Under the PLRA, all available administrative remedies must be exhausted whether suit is filed under §1983 or other federal laws.[11]

The Bureau of Prisons (BOP) makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results.[12] The administrative remedy process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated (BP-8 and BP-9). If the inmate's complaint is denied at the institutional level, he may appeal by filing a Regional Administrative Remedy Appeal with the Regional Office for the geographic region in which the inmate's institution of confinement is located

---

[7] Alexander v. Hawk, 159 F.3d 1321, 1324-25 (11th Cir. 1998)

[8] Id at 1325.

[9] Porter v. Nussle, 122 S. Ct. 983, 992 (2002).

[10] Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) (citing Alexander at 1326).

[11] Porter at 988.

[12] 28 C.F.R. § 542.10, *et seq.*

(BP-10).  (For an inmate at the FCC Coleman, this appeal would be filed with the Southeast Regional Office of the BOP in Atlanta, Georgia.)  Finally, if the Regional Office denies relief, the inmate can appeal that decision to the Office of General Counsel via a Central Office Administrative Remedy Appeal (BP-11).

Here, a review of the Plaintiff's administrative remedy submissions shows that Plaintiff submitted three administrative remedies relevant to the claims raised in this case.[13]  In administrative remedy number 301237-F1,[14] Plaintiff alleged that on September 21, 2002, he and other Muslim inmates were forced to pray with Chaplain Sykes who is not from their faith group.[15]  Plaintiff was told that if they did not pray with Chaplain Sykes, they would not be able to pray at all.  Thus, Plaintiff and other Sunni Muslims requested to be removed from the Friday Jum'Ah services because the law of Islam prevented them from praying with Chaplain Sykes.  In an effort to resolve the conflict, the executive staff at FCC Coleman met with a Muslim inmate and Chaplain Sykes.  At that meeting, it was agreed that Chaplain Sykes would no longer lead the prayer services, but that he would continue to attend the services, pray with the Muslim inmates, and monitor the services.

When this proposal was presented to the Muslim inmates, Plaintiff and several others could not in good conscience agree to such an arrangement.  Therefore,

---

[13] See the Defendants' Motion to Dismiss (Doc. 17), Ex. 1 at Attachments B, C, D, G, & H.

[14] Id at Attachment H.

[15] It appears that Chaplain Sykes is a Muslim, but is not a part of the Sunni sect to which the Plaintiff belongs.

although many of the other Muslim inmates agreed to the compromise, Plaintiff did not and refused to pray with Chaplain Sykes present.  Plaintiff states that he attempted to resolve this conflict with Defendant Potts, A.W. Johnson, Special Investigator Lyngaas, Captain Jenkins, Warden McKelvy, Chaplain Sykes, Chaplain Johnson, and Special Investigator McKinney.[16]  As a result, Plaintiff alleges that he and several other Sunni Muslims were later retaliated against by being placed in the SHU and given false incident reports.

Plaintiff and Coleman staff were unable to informally resolve Plaintiff's complaint, therefore, Plaintiff filed a formal grievance with the Warden.  Plaintiffs' formal grievance was rejected by the Warden because Plaintiff failed to state enough information regarding his specific concern and because Plaintiff failed to follow the proper procedural rules when filing the grievance.  Thus, Plaintiff was given five days to correct his grievance and resubmit his request.  It appears that Plaintiff resubmitted his grievance, but failed to correct any of the deficiencies listed in the previous rejection notice.  Therefore, Plaintiff's resubmission was rejected for the same reason as his original submission.  Plaintiff was again advised as to how to correct the deficiencies in his complaint and was given five additional days to do so.  Plaintiff filed a third submission more than 20 days later and that grievance was dismissed as untimely.  Plaintiff filed no further administrative remedies with regard

---

[16] With the exception of Special Investigator McKinny, these individuals are the additional defendants that Plaintiff wishes to add to this case pursuant to the Amended Complaint.

to this claim.

Next, Plaintiff initiated Administrative remedy number 310137-F1.[17] In that complaint, Plaintiff alleged that he was told by Defendant Potts that Muslims who were in the SHU could not give the Friday Jum'Ah service. Plaintiff also alleged that Chaplain Johnson had stated the same thing and that he forced the Muslims into the smallest room possible, that he monitored their services, and that he gave preferential treatment to other religious groups. In response to his informal grievance, staff stated the Muslim inmates were monitored for the safe and secure running of the institution. Therefore, Plaintiff's claim was not informally resolved.

Plaintiff then filed a formal grievance with the Warden. Plaintiffs' formal grievance was rejected for procedural reasons and Plaintiff was advised to correct his request and resubmit it within five days. It appears that Plaintiff did resubmit his request, but that he failed to correct the deficiencies of the original complaint. Therefore, Plaintiff's resubmission was rejected for the same reason as the original complaint. Plaintiff did not file any further submissions with regard to these claims or otherwise appeal the decision of the Warden.

Finally, Plaintiff submitted administrative remedy number 317388-F1.[18] In that request, Plaintiff alleged that Chaplain Johnson denied him a Quran, was biased toward Muslim inmates, and retaliated against Plaintiff for filing a civil lawsuit against

---

[17] Doc. 17, Ex. 1 at Attachment D.

[18] Id at Attachment G.

him. Plaintiffs' informal resolution was not resolved, therefore, Plaintiff filed a formal grievance with the Warden. The Warden denied Plaintiff's request and Plaintiff appealed to the Southeast Regional Office. Plaintiffs' appeal to the Southeast Regional Office was denied. Plaintiff did not file an appeal to the Office of General Counsel.

It is clear from a review of Plaintiff's administrative remedy submissions, that although he has initiated several grievances relating to the claims in this case, Plaintiff has not completed the administrative remedy process with regard to any of the claims raised in the Complaint or the Amended Complaint.[19] Therefore, because the exhaustion of <u>all</u> available administrative remedies is a prerequisite to suit, this Court does not have jurisdiction to entertain the claims raised in either the Complaint or the Amended Complaint. Accordingly, this case is due to be dismissed for the failure to exhaust administrative remedies.

## **Conclusion**

For the reasons set forth in this Order, Defendant Potts and Chaplain Johnson's Motion to Dismiss for the Failure to Exhaust Administrative Remedies (Doc. 17) is **GRANTED**. The Clerk is directed to enter judgment dismissing this

---

[19] A review of the Amended Complaint shows that Plaintiff has not stated any new allegations or filed any new documentation that would establish that he has exhausted his administrative remedies. Therefore, the Court can find no purpose in directing the Plaintiff to serve a copy of the Amended Complaint on counsel for Defendant Potts and Chaplain Johnson, or in directing the United States Marshal to service process upon the additional defendants. Plaintiff's claims would still be unexhausted and would still be dismissible for that reason. See 28 U.S.C. § 1915(e)(2) (the Court is required to dismiss a case at any time if the Court determines that the case is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief); see also Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001) (a claim may be dismissed as frivolous when it appears that a plaintiff has little or no chance of success).

case for the failure to exhaust administrative remedies. The Clerk shall also terminate any pending motions and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** at Ocala, Florida, this 4th day of May 2005.

_____
UNITED STATES DISTRICT JUDGE

c:  Shahborn Emmanuel
    Counsel of Record